UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
JOSEPH SCURTO,

              Plaintiff,

  -against-

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.
---------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1:21-CV-05301-FB

*Appearances:*
*For the Plaintiff*:
J. ANKLOWITZ
Pasternack, Tilker, Ziegler, Walsh,
Stanton & Romano, LLP
500 Express Drive South, Suite 100
Brentwood, NY 11717

*For the Defendant*:
BREON PEACE
United States Attorney
By: SEAN N. STEWART
Special Assistant United States Attorney
Eastern District of New York
c/o SSA/OGC
601 East 12th St. Room 965
Kansas City, MO 64106-2898

**BLOCK, Senior District Judge:**

      Joseph Scurto ("Scurto") seeks review of the Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings. For the following reasons, Scurto's motion is denied and the Commissioner's motion is granted.

1

**I.**

Scurto worked as a stocker and salesperson at an electronics firm until he was laid off in 2009. In 2013, Scurto's health began to deteriorate due to diabetes and a heart condition. Scurto filed for DIB on June 15, 2017 alleging disability as of January 1, 2013. After his claim was denied, he requested a hearing. Scurto appeared before Administrative Law Judge Sandra M. McKenna ("the ALJ") at a hearing on June 26, 2020. The ALJ denied Scurto's appeal, concluding that he retained the residual functional capacity ("RFC") to perform light work with several caveats.[1] Following this decision, Scurto submitted a request for review with the Social Security Appeals Council that was denied on July 26, 2021, producing this appeal.

**II.**

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] The ALJ found that Scurto could perform light work with frequent balancing, occasional climbing of stairs and ramps, stooping, kneeling, crouching or crawling, and never with climbing ladders, ropes, or scaffolds, operating heavy machinery, or working at unprotected heights or with moving mechanical parts.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

## III.

The Commissioner's decision is affirmed because Scurto failed to establish that he was disabled prior to his date last insured, the ALJ was not obligated to further develop the record, and the ALJ did not substitute her own lay opinion for that of a medical expert.

### a. Scurto was not disabled prior to the date last insured.

To be eligible for disability insurance benefits, a claimant must be insured for at least twenty of the forty quarters preceding the month in which the claimant applies for benefits. 42 U.S.C. § 423(a)(1)(A); (c)(1); 20 C.F.R. § 404.101(b); *Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989). The parties agree that Scurto has not worked since January 1, 2013 and his date last insured is December 31, 2014. AR. 17-18. A "period of disability" can only commence while a claimant is fully insured, so for Scurto to show entitlement to benefits, he would have to demonstrate that he became disabled prior to December 31, 2014. *See Papp v. Comm'r of Soc. Sec.,* No. 05 CIV.5695 AJP, 2006 WL 1000397, at *12 (S.D.N.Y. Apr. 18, 2006).

A claimant establishes disability by proving that he or she is unable to engage in substantial gainful activity by reason of a physical or mental impairment

3

that is expected to result in death, or which has lasted or could last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Surgeon v. Comm'r of Soc. Sec.*, 190 F. App'x 37, 39 (2d Cir. 2006). It is the claimant's burden to prove disability and here, Scurto failed to meet the burden of showing that he was disabled prior to December 31, 2014. 42 U.S.C. § 423(d)(5); *Ratliff v. Barnhart*, 92 F. App'x 838, 840 n.2 (2d Cir. 2004) ("Ratliff had the burden of proving that her post-coverage period medical evidence suggests that her disability existed prior to the expiration of coverage… and she did not meet that burden.") (Citing *Shaw v. Chater,* 221 F.3d 126, 133 (2d Cir. 2000)).

Scurto testified that his health began to decline in 2013 when he was hospitalized due to diabetes. In Scurto's application for DIB, he noted that he suffered from diabetes, but at the hearing with the ALJ, Scurto's attorney stated that his application was focused on his cardiac symptoms. A.R. 96 ("Primarily this case is cardiological.")  Further, Scurto did not provide any medical evidence as to his diabetes during the relevant time period.

In late 2014, Scurto sought treatment for cardiac symptoms. He was first examined by cardiologist Yuly Lyandres, M.D. ("Dr. Lyandres") on October 1, 2014 due to an echo test that revealed possible abnormalities in his heart function. A.R. 277. He informed Dr. Lyandres that five years prior he had a cardiac catheterization test performed which revealed no obstructive coronary artery

4

disease. *Id*. During that visit, Scurto also denied any chest pain or decline in exercise tolerance, but relayed that he had mild difficulty breathing when climbing stairs and walking up inclines, though he could walk very long distances on level ground. *Id*. An echocardiogram was performed and showed normal cardiac function with mild left atrial enlargement and mild diastolic dysfunction. A.R. 274. A carotid duplex test was also conducted, and it indicated no plaque at the carotid bifurcation and no stenosis. A.R. 284. Based on these findings, Dr. Lyandres prescribed Scurto aspirin and ordered additional diagnostic testing.

One week later, Scurto underwent a treadmill stress echocardiogram, which revealed normal sinus rhythm and no evidence of inducible ischemia, though Scurto had difficulty completing the test due to difficulty breathing. A.R. 279, 287. A Holter monitor report also indicated no significant arrhythmias. A.R. 285-87. A follow-up on November 3, 2014 indicated no evidence of ischemia, no valvular abnormalities, and normal systolic function. A.R. 287. Dr. Lyandres did note a systolic murmur and high blood pressure but remarked that overall, there was no present clinical evidence of unstable angina. Dr. Lyandres prescribed medication for Scurto's high blood pressure and encouraged Scurto to eat healthy and exercise regularly. A.R. 288. On November 5, 2014, a lower extremity venous test was completed, as well. It indicated evidence of venous insufficiency in the right lower extremity, but no evidence of significant peripheral arterial disease at rest in the

right leg or significant peripheral vascular occlusive disease in the lower extremities. A.R. 289-91.

After the relevant period, Scurto continued to seek cardiac care, which involved spirometry reports in March 2015, indicating moderate restrictions, and a follow up with Dr. Lyandres on May 5, 2015. A.R. 293-97. Scurto denied any chest pain or recent decline in exercise tolerance, nausea, vomiting diaphoresis, orthopnea, shortness of breath while sleeping, or lower extremity edema, and had not passed out. Tests indicated high blood pressure, but the EKG showed normal sinus rhythm with an incomplete right bundle block and nonspecific T-Wave abnormalities. A.R. 298. Another spirometry report conducted on May 5, 2015 indicated moderately severe restrictions. A.R. 300. In August 2015, he suffered a heart attack. A.R. 25, 303-304. In a follow up appointment on August 28, 2015 with Dr. Lyandres, the doctor noted that Scurto, "was in his usual state of health until approximately two weeks ago when while in the park he experience[d][sic] sudden chest tightness, nausea, or vomiting." A.R. 303. In January 2017, Scurto suffered a second heart attack. A.R. 344-49.

While the medical evidence indicates that subsequent to Scurto's date last insured, he suffered from more significant cardiac symptoms, including two heart attacks, the evidence prior to the date last insured does not reveal the same level of severity in his condition. *See Pollard v. Halter,* 377 F.3d 183, 193-94 (2d Cir.

2004) ("[E]vidence bearing upon [a plaintiff's] condition subsequent to the date upon which the earning requirement [i.e., insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments, which could reasonably be presumed to have been present…").

Scurto did not seek treatment for a cardiac impairment until close to the end of his date last insured and at that time had only mild cardiac symptoms. Because Scurto sought treatment for his cardiac symptoms at the end of the relevant period, and his symptoms at the time were treated with medication and lifestyle changes, he failed to meet his burden of establishing that he was disabled during the relevant time period. *See Kocaj v. Apfel*, No. 97 CIV. 5049 (SHS), 1999 WL 461776, at *6 (S.D.N.Y. July 6, 1999) ("Regardless of the seriousness of her disability as of [the Commissioner's final decision], plaintiff cannot qualify for disability benefits unless she became disabled before [the date last insured].").

**b. The ALJ did not substitute her lay opinion for that of an expert.**

Scurto contends that the ALJ substituted her own lay opinion for that of a medical expert. *See* Pl.'s Br. 13. Scurto was examined by Dr. Lyudmila Trimba, M.D. ("Dr. Trimba"), a consultative examiner, on September 1, 2017. Dr. Trimba reviewed Scurto's medical history and conducted an examination, observing that Scurto was obese but could walk without difficulty, could do a partial squat, and

7

did not require any assistive device for ambulation. Scurto's heart had a regular cardiac rhythm and there were no murmurs, gallops, or rubs, though he complained of chest tightness during the exam. Dr. Trimba concluded that Scurto had no limitations in his ability to sit or stand for a prolonged period, had mild to moderate limitations in climbing stairs, walking for a prolonged period, and in his ability to push, pull or carry heavy objects. Dr. Trimba remarked that Scurto should be restricted from activities requiring mild or greater exertion and from operating heavy machinery. The ALJ found Dr. Trimba's opinion to be generally persuasive, as it was consistent with the medical evidence and examination findings, but importantly noted that the exam occurred well after Scurto's date last insured.

    Scurto argues that Dr. Trimba's opinion that Scurto should be restricted from activities requiring mild or greater exertion should preclude even sedentary work. The ALJ's RFC determination limited Scurto to light work, which he argues deviates from Dr. Trimba's opinion that he should be restricted from activities with even mild exertion. Pl.'s Br. 13. Scurto contends that there is no other medical opinion as to his limitations, so by dismissing Dr. Trimba's opinion that he should be restricted from activities with even mild exertion, the ALJ substituted her own lay opinion for that of a medical expert. *Id.*

While an ALJ may find a medical expert's opinion persuasive, they are not obligated to adopt that opinion indiscriminately as part of their RFC finding. *See Sherwood v. Kijakazi*, No. 21CIV10847 KMK/PED, 2022 WL 19406585, at *19 (S.D.N.Y. Nov. 23, 2022), *report and recommendation adopted,* No. 21-CV-10847 KMK, 2023 WL 2662804 (S.D.N.Y. Mar. 28, 2023). An ALJ's RFC determination may not perfectly correspond with any one of the medical experts' opinions, and ALJs are entitled to weigh all of the available evidence to make an RFC finding that is consistent with the record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Here, the ALJ found Dr. Trimba's opinion generally persuasive, but pointed out that the examination took place well after the relevant time period. The ALJ also took into consideration the medical evidence from Dr. Lyandres from before and after the date last insured, which indicated normal heart rhythms and no ischemia, as well as Scurto's own subjective complaints. Scurto testified that his physical condition started to deteriorate in 2013 when was hospitalized due to his diabetes, but that he was not aware of his heart condition at that time and experienced his first heart attack in 2015, after the relevant time period. Scurto also stated in his function report, dated July 31, 2017, that he got winded lifting, is slower while walking and climbing stairs, but could stand and sit well and was alright kneeling, squatting, and reaching. The ALJ's RFC was mostly consistent

9

with Dr. Trimba's opinion, with no restrictions on sitting or standing, and only occasionally climbing ramps or stairs. The restriction for light work is consistent with the record, and the ALJ did not substitute her own lay opinion for that of the medical record, but rather took into account that Dr. Trimba's examination took place long after the date last insured. The RFC for light work was consistent with the medical evidence and Scurto's own testimony, and thus the ALJ's determination was supported by substantial evidence.

### c. The ALJ was not obligated to further develop the record.

Lastly, Scurto argues that the ALJ was obligated to develop the record to fill gaps created by inconsistencies. The ALJ is only obligated to develop the record where the evidence is insufficient to reach a conclusion. *See Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018); *see also Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are not obvious gaps in the administrative record, and where the ALJ possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejected a benefits claim.") (citing *Perez v. Chatter*, 77 F.3d 41, 47 (2d Cir. 1996)) (internal quotations omitted).

Here, the record was sufficient for the ALJ to reach her conclusion; it was based in part on Dr. Trimba's medical opinion and any diversion from that opinion was attributable to the length of time between Dr. Timba's examination of Scurto

and the date last insured. *See Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) ([The ALJ] must still base her conclusion on *some* medical opinion *or otherwise articulate the overwhelmingly compelling reasons for not doing so.*") (emphasis added). The ALJ was not obligated to develop the record further.

## CONCLUSION

Scurto's motion is **DENIED** and the Commissioner's motion is **GRANTED**.

**SO ORDERED.**

                 _/S/ Frederic Block_____

                 FREDERIC BLOCK

                 Senior United States District Judge

Brooklyn, New York

May 2, 2023